(Superior Court of Cincinnati—*General Term.*)

### CHARLES W. PIKE *v.* EQUITABLE NATIONAL BANK.

*Sale of goods to insolvent purchaser— What will render sale void.*—Where the purchaser of goods was at the time in fact insolvent, but there is no fraudulent misrepresentation, nor of any intent to defraud, or to support the claim that such purchaser had no reasonable expectation of paying for the goods, the mere fact that the purchaser knew at the time of the purchase that his debts exceeded his assets, will not vitiate the contract.

In Ohio, in sales to an insolvent purchaser, it is only where the knowledge of his insolvency by such purchaser is connected with the concealment of the fact or an absence of a reasonable expectation to pay, that fraud is shown, and the sale rendered void.

(Decided March, 1895.)

MOORE, J.

This is an action by Charles W. Pike against the Equitable National Bank to recover on the ground of conversion. At Special Term judgment was rendered for the defendant. The plaintiff below, and in error now, seeks to reverse the action of the court at Special Term, and assigns as errors that the finding was not supported by the evidence and was contrary to law.

The record shows a course of dealing between the parties as follows:

It appears that on June 25, 1892, P. Marsicano, of San Francisco, Cal., through the plaintiff, Charles W. Pike, contracted with A. R. Clark & Co., of Cincinnati, Ohio, for the sale of four hundred (400) cases—eight hundred dozen of canned peaches of the brand "Perfection"—for delivery the latter half of October, at one dollar and fifty cents ($1.50) per dozen. The terms were sixty days acceptance, or cash ten days, less one and one-half per cent., with bill of lading attached.

On the sixteenth day of November, 1892, P. Marsicano assigned the contract to the plaintiff, and sold the peaches called for to the plaintiff.

The plaintiff, Charles W. Pike, November 16, 1892, at San Francisco, Cal., shipped the peaches to Cincinnati to his own order, with instructions to notify A. R. Clark & Co., and on the same day drew on A. R. Clark & Co., through Wells, Fargo & Co., his draft of that date, made payable January 16, 1893, for the price of the peaches, or one and one-half off cash in ten days. On November 17, 1892, the plaintiff wrote A. R. Clark & Co. a letter inclosing invoice covering shipment made on the sixteenth day of November, 1892, of 400 s-s of Perfection Valley peaches, as per contract, and informing them that he had drawn on them for the amount of the invoice, terms sixty days acceptance from said date, or cash less one and one-half per cent. On November 17, 1892, the plaintiff drew a draft on A. R. Clark & Co. for $1,200, to be accepted upon presentation against the shipment through Wells, Fargo & Co., his bankers, with the bill of lading attached for payment or acceptance by A. R. Clark & Co. On November 29, 1892, A. R. Clark & Co. telegraphed the plaintiff: "No bill of lading, invoice or notice of shipment of peaches November 16. Trace and wire us to whom bill of lading and invoice mailed. Answer."

On this same date the plaintiff replied by telegraph to A. R. Clark & Co.: "Draft. Bill lading at Third National Bank. Apply. Am mailing duplicate."

The following day, November 30, 1892, W. W. Blair & Co., the representatives and brokers of the plaintiff in Cincinnati telegraphed the plaintiff Clark: "Draft paid November 8 (referring to a prior transaction). Perfection peaches here. No documents. Will store. Wire reply quick."

On December 1, 1892, the plaintiff answered the above telegram, which, there was testimony tending to show, was based upon a statement made by A. R. Clark & Co.: "If bill lading lost, have Clark protect draft and I will instruct railroad deliver without bill lading." On December 2, 1892, W. W. Blair & Co. wired that the telegram had been received, and that Clark would protect the draft. This was Clark's answer to W. W. Blair & Co. on submission to them of Pike's telegram.

On December 3, 1892, the plaintiff directed the railroad company to deliver the peaches to A. R. Clark & Co., without bill of lading, which was done, and on the same day, A. R. Clark & Co. ware-housed four hundred (400) cases of Perfection peaches, with Robert A. Dykins & Co., a storage house in Cincinnati.

The record further shows that on December 10, 1892, A. R. Clark & Co. took out of the warehouse one hundred and one (101) cases of the peaches.

and on December 14, 1892, made a bill of sale on settlement to the defendant, the Equitable National Bank, for assorted groceries, to the amount of $16,621.37, including 299 cases of Perfection peaches, (598 dozen), at $1.81 per dozen, amounting in value to $1,082.38. The bank surrendered to A. R. Clark & Co., promissory notes, together with collaterals held as security by it, aggregating $16,300.00, leaving a balance on settlement of $321.37, which was paid to A. R. Clark & Co., by the bank.

It appears that Clark neither paid nor accepted the draft, nor is there any evidence that the draft was ever presented for payment.

It is the contention for the plaintiff in error that, upon discovery of the transfer to the bank, he had the right to rescind the contract of sale, and recover the goods, because of fraud in the purchase, and in getting possession ; that the plaintiff. A. R. Clark & Co., was in a failing condition, and irretrievably insolvent.

The contention of the defendant in error is, that the circumstances under which it acquired possession of the property, or the conduct of A. R. Clark & Co., (for *mala fides* on the part of the bank is not claimed), contains no elements of fraud; that, although Clark & Co. may have been insolvent at the time of the purchase of the property and its subsequent transfer to the bank, yet that they had reasonable expectation of being able to pay for the goods at the maturity of the draft; that the sale to Clark & Co. was only upon the promises of Clark & Co. to accept the draft when presented, and this rendered the sale neither void nor voidable, but left the right of disposition of the property in the hands of Clark & Co., provided there was no intent to defraud. In the absence of fraud, the bank had the right to the possession of the property, having paid for it a valuable consideration, upon the apparent title of Clark & Co., rendered apparent by the conduct of the plaintiff in error, in giving possession in the first place to Clark & Co., upon their promise to accept the draft upon presentation for the purchase-price. There seems to be no difficulty in applying the well settled rules of law to either state of facts, as contended.

The order for the goods in question, in favor of Clark & Co., was obtained by the Cincinnati brokers of the plaintiff in error, on June 25, 1892, and the goods were shipped unsolicited by the plaintiff in error, to A. R. Clark & Co., on November 16 following. At this time, and at the date of the order, it appears by the testimony of Clark & Co's. bookkeeper, that the business of the firm was carried on in the usual way, up to the time of the assignment, several months afterwards, and that if an assignment was contemplated, nothing in the course of the business disclosed it; and it further appears, that for some time prior to the assignment, the deposits of A. R. Clark & Co. in the bank, where they had done business for three years, were about the same, and that when questioned by the bank on their insolvency, said, if their creditors did not press them, they would continue their business and get through.

It further appears, that for thirty or sixty days prior to the failure in December, the business sustained no important losses, and that the volume of business had for some time, and at that time, averaged from $35,000.00 to $40,000 00 per month, and that their store house was well stocked with goods; and it further appears that for two years before the assignment no trial balances were struck, or inventory of stock taken, and there is no evidence that such had been done prior to that period.

It is true that the defendants failed to take the ordinary precautions to inform themselves of this financial condition, and we must concede that they knew that the firm was in financial distress, and could borrow money only on collateral; and in cases where such collateral was merchandise they

were indebted for it to others; yet there was no proof that A. R. Clark & Co. knew they were insolvent at the time the order for the goods was given, or at any time up to the assignment, six months later, at which time the evidence seems to indicate that a suspension of business was caused by a pressure of creditors, for, up to the time of the assignment, the firm undoubtedly was a going one. There is an absence of evidence of any fraudulent misrepresentation, or of any intent to defraud—to support the claim that A. R. Clark & Co. had no reasonable expectation of paying for the goods in question, and having no reasonable expectation of so doing, is equivalent to an intent not to pay.

The plaintiff in error cites the case of *Talcott* v. *Henderson*, 31 Ohio St. Rep., page 162, in support of his claim that the purchase was fraudulent from the fact that the purchaser had no reasonable intention to pay.

We quote from the opinion of the court : " An intention on the part of the purchaser of goods not to pay for them, existing at the time of the purchase, and concealed from the vendor, is unquestionably such a fraud as will vitiate the contract. But it is certainly true, on the other hand, that where no such fraudulent intent exists, the mere fact that the purchaser has knowledge that his debts exceed his assets, though the fact be unknown and undisclosed to the vendor, will not vitiate the purchase.

" Whether, therefore, a contract of purchase where the purchaser fails to disclose his known insolvency. is fraudulent or not, depends on the intention of the purchaser; and whether that intention was to pay or not to pay, is a question of fact, and not a question of law."

It must therefore be admitted, that in this state, in all sales to an insolvent purchaser, it is only where knowledge of his own insolvency by the purchaser is connected with the concealment of the fact, or an absence of a reasonable expectation of paying, that fraud is shown, and the contract rendered void, and the court, in the cases just cited, says: " Where an insolvent merchant is engaged in an honest effort to retrieve his fortunes, the appearance of wealth indicated by his stock in trade is not equivalent to a representation of solvency, and one who gives him credit without inquiry has no right to complain of fraud."

It is true, in the case just cited the facts show that at the time of the purchase the purchasers were receiving the support of a wealthy firm, and thus giving the purchasers reasonable expectation of paying their debts ; yet the goods were purchased in June, delivered on July 11th, and the assignment made on July 25th, with an appraisement of assets at $88,000 00, and with liabilities amounting to $450,000.00. In the case at bar, from the time the goods were ordered in June to their delivery in December, the business of A. R. Clark & Co. continued in the usual way, until interfered with by creditors of the firm, the firm in no way hastening the shipment or delivery of goods. In the meantime the conduct of Clark & Co. with the bank shows that they reasonably expected to tide over affairs, and that their assignment was unexpected.

Under these circumstances we are of opinion the transfer to the defendants carried the right of possession and ownership.

*C. K. Shunk*, for plaintiff in error.

*D. Heinsheimer*, *Jr.*, and *Jacob Shroder*, *contra*.

SMITH and HUNT, JJ., concur.